# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JUSTIN R. BAKKER, <br><br> Plaintiff, <br><br> v. <br><br> MOKENA FIRE PROTECTION DISTRICT, <br><br> Defendant. | Case No. 19 C 5586 <br><br> Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Defendant Mokena Fire Protection District brings a Motion to Dismiss (Dkt. No. 10) under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, the Court grants the Defendant's Motion. Plaintiff Justin Bakker's Complaint (Dkt. No. 1) is dismissed with prejudice.

## I. BACKGROUND

Justin Bakker ("Bakker") was a firefighter paramedic for the Mokena Fire Protection District ("Mokena"), a municipal corporation that provides emergency and fire services to Mokena, Frankfort, Orland Park, and Homer Glen. (Compl. ¶¶ 4, 11, Dkt. No. 1.) He alleges that on three occasions, between December 2015 and August 2018, supervisors made comments to him that constituted continuous acts of sexual harassment and discrimination. Bakker alleges that the Defendant targeted him by calling his sexual

orientation into question. Bakker is heterosexual. (Compl. ¶¶ 34, 35).

First, in December 2015, Bakker's supervisor, Assistant Chief Cirelli ("Cirelli"), overheard that Bakker planned to rent his house to another firefighter. In response, Cirelli said, "Well at least someone will be getting some action in that house. Well at least someone will be getting some action with a girl, at least." (Compl. ¶¶ 12, 13.) Bakker complained to his union representative; a week later, during a meeting, Mokena's fire chief assured Bakker that Cirelli's behavior was unacceptable and said it would not happen again. (Compl. ¶¶ 15–17.)

Second, on July 4, 2018, during Mokena's July Fourth parade, firefighters discussed Mokena's first Queer Pride parade. (Compl. ¶ 18.) They also discussed special uniform shirts the firefighters would receive for cancer month and for supporting the military. (Compl. ¶¶ 18–20.) During this discussion, Mokena's President of the Board of Trustees, William Haas ("Haas"), said to Bakker in front of his colleagues that Haas was "going to get [Bakker] a rainbow-colored shirt and that [Bakker] would wear it with all kinds of pride." (Compl. ¶ 21.) Bakker again contacted his union representative and later saw Haas meet privately with Mokena's fire chief, but no further action was taken. (Compl. ¶¶ 22–24.)

Finally, on August 21, 2018, Bakker and nine colleagues attended a training session regarding fire alarm panels used in retirement homes. (Compl. ¶¶ 25, 26.) The fire marshal, Mark Sickles ("Sickles"), taught the session. (Compl. ¶ 25.) Sickles said that the department attaches a sheet of paper on the front of the panel explaining how the fire department uses the panel. (Compl. ¶ 27.) Because there were apparently different pieces of paper posted for different panel users—retirement home staff, the alarm company, and the fire department—Bakker suggested that it might be easier to understand if the different pieces of paper were different colors. (Compl. ¶ 28.) In response, Sickles said, "How about we change the color to pink just for you, you like that color don't you," and told Bakker to "shut up." (Compl. ¶¶ 29, 30.) Several hours later, Sickles, the Mokena fire chief, Bakker, and Bakker's union representative met to discuss this comment. (Compl. ¶ 31.) Sickles admitted to his remark and apologized for it. (Compl. ¶ 32.) Bakker alleges that he informed the fire chief that he believed he was being targeted "immediately after" this incident and that these three incidents called his sexual orientation into question. (Compl. ¶ 34.)

On June 5, 2019, Bakker filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Mokena, alleging sex discrimination and sexual harassment. (EEOC

Compl., Ex. A to Compl., Dkt. No. 1.) On June 24, 2019, the EEOC dismissed Bakker's claim, entitling him to file an action in this Court within 90 days. (EEOC Dismissal, Ex. B to Compl., Dkt. No. 1.) *See also* 42 U.S.C. § 2000e–5(f)(1). Bakker filed the action in this Court on August 19, 2019, alleging sex discrimination under Title VII of the Civil Rights Act of 1964 and intentional infliction of emotional distress.

## II. LEGAL STANDARD

A 12(b)(6) motion to dismiss challenges the sufficiency of the complaint. *Christensen v. Cty. of Boone*, 483 F.3d 454, 457 (7th Cir. 2007). To overcome a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). When considering a 12(b)(6) motion to dismiss, the Court must "accept[] as true all well-pleaded facts alleged, and draw[] all possible inferences in [the plaintiff's] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

## III. DISCUSSION

### A. Title VII Claim

Bakker alleges three discriminatory acts in violation of Title VII. Defendants argue two of those incidents are time-barred. For Title VII purposes, there are two types of discriminatory acts: "discrete" acts and acts contributing to a hostile work environment. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–18 (2002). Each discrete act is a "separate actionable unlawful employment practice" that "starts a new clock for filing charges." *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 723 (7th Cir. 2004). Discrete acts falling outside the statute of limitations are barred even if they relate to other acts falling within the statute of limitations. *Id.* Acts contributing to a hostile work environment are different, and if a plaintiff can demonstrate separate incidents are part of a "continuing violation," the incidents are considered "part of one unlawful employment practice." *Morgan*, 536 U.S. at 115. When this occurs, if an act "contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117.

"Section 2000e-5(e)(1) requires that a Title VII plaintiff file a charge with the Equal Employment Opportunity Commission

(EEOC) either 180 or 300 days 'after the alleged unlawful employment practice occurred.'" *Morgan*, 536 U.S. at 104–05 (2002) (citing 42 U.S.C. § 2000e-5). Bakker submitted his EEOC charge on June 5, 2019. Accordingly, any instance of a discriminatory act or unlawful employment practice before 300 days earlier, August 9, 2018, is time-barred unless Bakker can establish that the three incidents were part of a continuing violation.

In evaluating incidents alleged to be part of a continuing violation, courts should consider whether the acts "involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Morgan*, 536 U.S. at 120 (internal quotations omitted). Acts "so discrete in time or circumstances that they do not reinforce each other cannot reasonably be linked together into a single chain . . . to defeat the statute of limitations." *Lucas*, 367 F.3d at 727.

Bakker's Complaint alleges three incidents over the course of two and a half years. All three incidents involved the same type of inappropriate conduct, but each incident involved a different manager. And although the latter two incidents occurred within the space of about a month, about two and a half years separated the first and second incidents. This is too long a gap to support a continuing violation. *See Selan v. Kiley*, 969 F.2d 560, 567 (7th Cir. 1992) ("Almost two years passed between [incidents]. This

considerable separation weighs heavily against finding a continuing violation."). Accordingly, the December 2015 incident cannot be included as a continuing violation. Finally, the July and August 2018 incidents involved different managers and, although they were similar situations, the occurrence was not relatively frequent, and this weighs against allowing the July 2018 incident to count as a continuing violation. Thus, the Court finds the December 2015 and July 2018 incidents time-barred.

Next, the Court considers whether the August 2018 incident is independently actionable. To succeed on a hostile work environment claim, a plaintiff must show: (1) he was subject to unwelcome harassment; (2) the harassment was based on sex; (3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. *Gates v. Bd. of Educ. of the City of Chicago*, 916 F.3d 631, 636 (7th Cir. 2019). Here, the third element is dispositive.

The test for this third element—whether harassment was severe enough to create a hostile work environment—has two components: a subjective and an objective test. *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 674 (7th Cir. 1993). If a plaintiff "does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's

employment, and there is not a Title VII violation." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993). To determine whether "a particular work environment is objectively offensive, [courts] must consider the severity of the conduct, its frequency, whether it is merely offensive as opposed to physically threatening or humiliating, and whether it unreasonably interfered with an employee's work performance." *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018). Bakker's Complaint alleges that Bakker was so affected by the harassment that he took medical leave, and the Defendant does not challenge the subjectivity ground. Thus, the Court focuses only on the objective test.

The Seventh Circuit set a high bar to establish an objectively hostile work environment. Courts "assume employees are generally mature individuals with the thick skin that comes from living in the modern world." *Swyear*, 911 F.3d at 881. Employers "generally do not face liability for off-color comments, isolated incidents, teasing, and other unpleasantries that are, unfortunately, not uncommon in the workplace." *Id.* Jokes that are "crude" and "immature" do not create employer liability, even though the jokes are "boorish," inappropriate, and in poor taste. *Id.*

Bakker argues that whether the August 2018 incident created a hostile work environment is a question of fact better left for a jury or considered at summary judgment. But at the motion to

dismiss stage, courts must consider whether the facts alleged allow a reasonable inference that a defendant is liable for the misconduct alleged; the claim must be plausible on its face. *Iqbal*, 556 U.S. at 678. Even if everything Bakker claims is true, the August 2018 incident on its own falls far short of the Seventh Circuit's high bar for establishing employer liability. *See e.g., Swyear*, 911 F.3d at 881 ("high bar" for establishing objectively hostile work environment); *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002) ("occasional vulgar banter, tinged with sexual innuendo of coarse or boorish workers generally does not create a work environment that a reasonable person would find intolerable"). The set of facts stated in Bakker's Complaint provides no possible path to employer liability. Accordingly, the Title VII claim must fail. Further, because the December 2015 and July 2018 incidents are time-barred and because the August 2018 incident alone cannot establish liability, the Title VII claims must be dismissed with prejudice.

### B. Intentional Infliction of Emotional Distress

Bakker further claims that these three incidents were "extreme and outrageous," and that because of them he now suffers from post-traumatic stress disorder, depression, anxiety, panic attacks, sleeplessness, and "other psychological and physiological ailments and infirmities." (Compl. ¶¶ 38, 40.) He also claims that

Mokena, through its employees, intended to inflict distress on Bakker, and knew that Mokena employees' conduct would have a high probability of causing Bakker severe distress. Accordingly, Bakker brings a claim for intentional infliction of emotional distress ("IIED").

The Illinois Human Rights Act ("IHRA") prohibits employers from engaging in sex discrimination and sexual harassment. 775 Ill. Comp. Stat. 5/2-102(A), (D). "The IHRA preempts all state law claims seeking redress for a civil rights violation within the meaning of that statute." *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). This includes IIED claims. *Id.* When facts stated in an IIED claim are the same facts the plaintiff relies on in his discrimination or harassment claim, the IHRA preempts the IIED claim. *Quantock v. Shared Mktg. Servs.*, 312 F.3d 899, 905 (7th Cir. 2002). If the sexual harassment claims and the tort claims are "inextricably linked," the plaintiff must bring the claims before the Illinois Human Rights Commission. *Id.*

Bakker argues that the set of facts supporting his IIED claim is different from the set of facts supporting his harassment claim. He asserts that "repeated name calling," "ignoring Plaintiff's repeated complaints," and "embarrassing the Plaintiff in front of other co-employees" are practices that create one claim, and that the "action of terminating the Plaintiff or creating an environment

so pervasively hostile it required him to take medical leave from his work place" are facts creating a separate claim. (Resp. at 9, Dkt. No. 13.)

This argument is strange and hard to follow. It fails for two reasons. First, Bakker's Complaint makes no mention of any kind of termination; the first time Bakker references termination is in his response brief. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") Even if Bakker's alleged termination involved a set of facts not inextricably linked to the facts involved with Bakker's alleged harassment, he cannot raise the issue for the first time in a response brief. Therefore, to the extent Bakker alleges termination, the Court will disregard it.

Second, it is obvious that Bakker's Title VII claim and his IIED claim are rooted in the same set of facts. Without the three incidents Bakker cites in his Complaint, there are no facts to support an IIED claim. He presents the same three incidents to support his Title VII claim. Thus, the two are inextricably intertwined. Accordingly, the Court finds that the IHRA preempts Bakker's IIED claim, and it must be dismissed.

## IV. CONCLUSION

For the reasons stated herein, Defendant Mokena Fire Protection District's Motion to Dismiss (Dkt. No. 10) is granted. Plaintiff Justin Bakker's Complaint (Dkt. No. 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　United States District Court

Dated: 3/9/2020